UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

LARRY G. DAVIS,

    Plaintiff,

vs.                                                                   Case No. 2:13-cv-02486

BAKER DISTRIBUTING COMPANY LLC,

    Defendant.                                       **JURY DEMANDED**

---

**COMPLAINT**

---

## I. INTRODUCTION

Comes now Plaintiff, Larry G. Davis, and sues Defendant Baker Distributing Company LLC. As more specifically set forth below, Plaintiff asserts that he was discharged from his employment with Defendant in violation of Tennessee law for making a workers' compensation claim against Defendant.

## II. JURISDICTION

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

## III. STATEMENT OF FACTS

2. Plaintiff Larry G. Davis is an adult citizen and resident of Desoto County, Mississippi.

3. Defendant Baker Distributing Company LLC is a Delaware formed limited liability company doing business in Memphis, Tennessee. Defendant's principal place of business is in Jacksonville, Florida.

4. Plaintiff became employed by Defendant Baker Distributing in approximately 2005 when Defendant Baker Distributing purchased Pameco. Plaintiff began working with Pameco in approximately 2001.

5. At all times herein, Plaintiff worked as a manager for Defendant at one of its Memphis facilities located at 649 North Parkway, Memphis, Tennessee. Plaintiff's primary job duty was to manage the sale of air conditioning equipment and supplies.

6. Plaintiff injured his back during the course and scope of his employment with Defendant on March 16, 2012.

7. Prior to his work-related back injury on March 16, 2012, Plaintiff had never been written up or disciplined in any manner. The year before, in 2011, Plaintiff had received recognition from Defendant for being one of the top managers in the company.

8. In November 2011, Plaintiff supervised three employees: Messrs. K.V., R.P., and B.H. At the end of November of 2011, R.P., who had 37 years of experience, was terminated, and Plaintiff was left with two employees. Plaintiff was not allowed by District Manager Dean Smith to hire another employee. Therefore, Plaintiff was forced to do more physical work in the warehouse.

9. In February of 2012, Plaintiff received an e-mail from Baker's corporate office requiring that K.V. be given a "surprise" drug test. In all of his years with the company, this was the first time that Plaintiff had been asked to give an unannounced drug test to an employee. At

the time of the request, K.V. was on vacation. Plaintiff contacted K.V. and told him he was to come take a drug test immediately. K.V. became upset and told Plaintiff that he was quitting and would not be returning to work. K.V.'s resignation left Plaintiff with only one employee. The only person available to replace K.V. was a trainee.

10. After Plaintiff injured his back on March 16, 2012, he promptly reported the injury to Mr. Smith and filed a workers' compensation claim with Defendant's corporate office.

11. Plaintiff was apprehensive about making a workers' compensation claim, as Defendant had indicated through an email in 2012 to Plaintiff and other members of management that it had very low tolerance for work-related injuries.

12. Despite his back pain and Plaintiff's doctor's opinion that surgery was needed, Plaintiff continued to work. Plaintiff knew Defendant was entering the busy season, so Plaintiff took spinal shots with the hope that he could postpone treatment until his branch entered into the slower months.

13. When his back pain failed to subside, Plaintiff emailed Mr. Smith and told him that despite his best efforts, walking through the warehouse was increasing his back pain.

14. During the summer of 2012, following his work-related injury, Plaintiff's facility was the subject of an internal audit. Historically, Defendant had two audits per year: one in the late spring and one in the fall. Plaintiff had never before failed an audit. In fact, Plaintiff's most recent audit score of 86 was considered by Defendant to be a satisfactory score.

15. At the time of the summer 2012 audit, Mr. Smith knew Plaintiff was (and had been for a while) short-handed. Plaintiff was trying to train a new person in the warehouse while simultaneously dealing with pain in his back due to his work-related injury. Under the

circumstances it was not surprising to Plaintiff that this audit resulted in the lowest score Plaintiff had ever had during his 12 years managing the branch.

16. Despite his score, Plaintiff was not immediately concerned about losing his job. When another branch (Branch 260) had recently received an audit score in the fifties, its manager, who had not filed a workers' compensation claim, was not terminated. In fact, Plaintiff is personally aware that Defendant worked with Branch 260 to help raise their score. Plaintiff also understood from his history with Defendant that Defendant's company policy, as well as its past practice, permitted a manager to make up a first-time low score with a good next audit. Only if the second audit score was low, would Defendant consider terminating the branch manager.

17. The end of June and first part of July is traditionally the busiest time of the year for Defendant. Despite this, in 2012 Plaintiff's profit and loss results were satisfactory and customer satisfaction was good. In fact, at the time of his termination, Plaintiff was on pace to receive a performance bonus because of his positive performance.

18. Following the summer 2012 audit, Plaintiff researched and corrected all audit issues, but had not had the time to enter the information into the computer. Because Plaintiff had previously advised Dean Smith that they were short staffed and reminded him about Plaintiff's back injury, Plaintiff did not think this would cause any problems. Neither Dean Smith nor anyone in the Defendant's corporate office contacted Plaintiff to remind him that the updates were late or to request that he send them in immediately.

19. Following the internal audit, Plaintiff was abruptly terminated by Defendant in July of 2012. Plaintiff's District Manager Dean Smith simply told Plaintiff that he was being

4

terminated, without giving Plaintiff any specific reason for his termination.

20.     On the day that Dean Smith terminated Plaintiff, Smith spent most of the day in Plaintiff's branch, but Smith did not communicate with Plaintiff at all until the end of the day when Smith terminated Plaintiff.

21.     Plaintiff had never been written up and had never been given a verbal warning at any time during his employment. In February of 2012, Plaintiff was given a Managers Award and a $6,000.00 bonus by his previous District Manager. At the end of June 2012, Plaintiff was running at 12.9 EBIT. A 10 EBIT earns an additional bonus at the end of the year.

22.     Based on the foregoing allegations, Defendant's action in discharging Plaintiff was intentional, willful and malicious and was carried out with complete and reckless disregard for Plaintiff's rights under the common law of the State of Tennessee and the Tennessee Workers' Compensation Law.

23.     As a direct result of the Defendant's wrongful and retaliatory action, Plaintiff has suffered and will continue to suffer loss of income and benefits associated with his employment.

24.     As a direct result of Defendant's wrongful and retaliatory action, Plaintiff has suffered and will continue to suffer humiliation, embarrassment and emotional distress.

## IV. CAUSE OF ACTION

25.     Defendant's conduct as described above constitutes the common law tort of retaliatory discharge in violation of the strong public policy of the State of Tennessee as recognized by the Tennessee Supreme Court in <u>Clanton v. Cain-Sloan Co.</u>, 677 S.W.2d 441 (Tenn. 1984).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court cause services to be issued upon Defendant. Plaintiff further demands a jury to hear this cause and upon hearing thereon, prays that the Court:

1.   Enter a judgment in favor of Plaintiff for not less than $1,000,000 finding Defendant's conduct to constitute common law retaliatory discharge in violation of the strong public policy of the State of Tennessee;

2.   Award Plaintiff back-pay and front-pay (if reinstatement is not feasible) in an amount to be determined by the jury at trial;

3.   Award Plaintiff compensatory damages in an amount to be determined by the jury at trial;

4.   Award Plaintiff punitive damages in an amount to be determined by the jury at trial; and,

5   Award Plaintiff such other and further relief, including, but not limited to, pre-judgment interest, post-judgment interest, and the costs of this action, as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ William B. Ryan
William B. Ryan #20269
Janelle A. Crandall #31359
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN 38104
901/278-1004
Attorneys for Plaintiff